UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ASHLEY ROONEY, ) | |
| ) | |
| Plaintiff ) | |
| v. ) | CV-06-20-B-W |
| ) | |
| SPRAGUE ENERGY CORP., ) | |
| ) | |
| Defendant. ) | |

## ORDER ON DEFENDANT'S MOTION FOR A JURY VIEW AND ON PLAINTIFF'S MOTION FOR INSPECTION OF PREMISES

This Order addresses two separately-filed, but related motions. On June 12, 2007, Mr. Rooney moved for an order permitting an inspection of the Sprague Terminal in Searsport, Maine. *Pl.'s Mot. for Inspection of Premises* (Docket # 42) (*Pl.'s Mot.*). On the same day, Sprague Energy Corp. (Sprague) moved to request that the jury in this civil action be accorded a view of its terminal in Searsport, Maine. *Def.'s Mot. for Order Permitting the Jury's View of the Searsport Terminal* (Docket # 43) (*Def.'s Mot.*). Each party objects to the other's motion. *Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for Order Permitting the Jury to View the Searsport Terminal* (Docket # 44) (*Pl.'s Opp'n*); *Def.'s Mem. of Law in Opp'n to Pl.'s Mot. for Inspection of Premises* (Docket # 51).

Regarding his motion for inspection, Mr. Rooney wishes to enter the Sprague Terminal to refresh his recollection as to its layout, to learn of any changes since his last day on the job approximately three years ago, to photograph certain aspects of the Terminal as evidence, and finally to provide information with which to cross-examine Sprague's expert. Sprague objects, noting that the Plaintiff's request is taking place after the close of discovery and that the Plaintiff's visit would cause undue disruption in the Terminal's operation.

**I.    MOTION FOR JURY VIEW**

Regarding its motion for a jury view, Sprague argues that the critical questions for jury resolution include the nature of the Terminal Operator's job and Mr. Rooney's ability to perform its essential functions. Sprague contends that the jury would benefit from viewing "the Searsport Terminal, the areas walked and/or climbed, ladders, stairways, gauges, equipment driven, including large construction equipment, etc. and tasks of the Terminal Operator, if being performed at the time of the view, or at minimum the locations where tasks are performed, and what the tasks are, including without limitation vessel duty tasks." *Def.'s Mot.* at 3. Mr. Rooney objects, citing logistical hurdles and stating that the Terminal may have changed since Mr. Rooney last worked there three years ago. *Pl.'s Opp'n* at 1.

Whether to permit a jury view is "entrusted to the sound discretion of the trial court." *United States v. Crochiere*, 129 F.3d 233, 236 (1st Cir. 1997). In making this determination, the court may consider such factors as "the orderliness of the trial, whether the jury would be confused or misled, whether it would be time-consuming or logistically difficult, and whether cross-examination had been permitted regarding the details of the scene." *Id.* An additional factor is whether "the view would . . . have presented any clearer view of the evidence than was achieved through the use of photographs at trial . . . ." *United States v. Pettiford*, 962 F.2d 74, 76 (1st Cir. 1992).

Mr. Rooney lists some additional considerations: (1) the importance of the evidence to be obtained and the circumstances of the case on trial; (2) whether it is reasonably certain that the view will substantially aid the jury in reaching a correct verdict; (3) whether the jury could visualize the scene from the testimony submitted; and, (4) whether the conditions of the scene since the time of the event are sufficiently the same at the time of trial to make a jury view

helpful.  *Pl.'s Opp'n* at 2.; *see also State v. Ruiz*, 34 P.3d 630, 642 (N.M. Ct. App. 2001); *State v. Maddox*, 660 P.2d 132, 133-34 (N.M. Ct. App. 1983).

Here, Sprague has offered reasons a view of the Sprague Terminal would assist the jury's understanding of the specific nature of the terminal and the details of the Terminal Operator position.  It has not, however, addressed why its substantial equivalence could not be obtained through other, less onerous means, such as the presentation of a videotape of the terminal, photographs, maps, job descriptions, computer generated or enhanced images, and testimony.  The Court is unconvinced that these alternative methods would be unavailable; in fact, these alternatives, if carefully prepared, could present this evidence at least as effectively as an on-site tour.

The Court takes judicial notice of the fact that the Sprague Terminal is located at Mack's Point in Searsport, approximately thirty miles from the federal courthouse in Bangor, Maine and that it would take as much as two hours to travel to and from the Terminal.  Sprague does not estimate the amount of time that would be necessary for the jury to view the Terminal; however, if the view took an hour, this would mean that the substantial portion of one full day of trial testimony would be compromised.[1]

Finally, if allowed, the Court must closely monitor the jury view to ensure certain safeguards are followed. In *Clemente v. Carnicon-Puerto-Rico Management Assocs., L.C.*, 52 F.3d 383 (1st Cir. 1995), the First Circuit set forth a five-step protocol:  (1) "counsel should be alerted to a proposed view at the earliest practicable time and given an opportunity to be heard concerning it;" (2) "the jury should be instructed prior to embarking on the view that the view itself is not evidence;" (3) "counsel should be given the opportunity to attend the view, although

---

[1] The Court usually schedules jury trials from 8:30 a.m. to 2:30 p.m.  Three hours for the view would be an optimistic estimate.  The logistics of transportation, security, traffic, snacks, bathroom breaks, and miscellaneous delays would likely cause a more significant delay.

3

the judge may, in his discretion, place limits on their interaction with the subject of the view and with the jurors;" (4) "the judge ordinarily should attend the view;" and, (5) "the court should employ some method of fully and accurately recording that which transpires at the view, usually by enlisting the attendance of a court reporter." *Id*. at 386.

The disadvantages of lost trial time, additional expense, and potential legal pitfalls substantially outweigh whatever slight incremental advantage, if any, an on-site visit would have over the presentation of alternative evidence.

**II.     Motion for Inspection**

Ordinarily, a motion for entry upon land should be made pursuant to Rule 34 within the discovery period.[2] However, the denial of the Defendant's motion for jury view places the Plaintiff's motion for inspection in a different context. If the jury had been allowed to visit the Terminal, this would have satisfied the Plaintiff's desire to revisit the premises to refresh his recollection, and would have assured that the jury would have visual evidence of the layout, activity, and job duties of various positions. With the denial of the motion for jury visit, Sprague will presumably be videotaping or photographing its premises to produce evidence that it proposes to admit at trial. To deny the Plaintiff access to the Terminal, where both parties contend the jury would significantly benefit from knowledge of the site, would be inequitable. Further, Sprague's protestations against the undue disruption of Mr. Rooney's proposed visit ring hollow in view of its willingness to allow a troupe of jurors, attorneys, parties, security officers, and court personnel to visit the same site.

---

[2] Rule 34 is a discovery rule, which provides a party a mechanism for access to another's land. *See* FED. R. CIV. P. 34(a) ("Any party may serve on any other party a request . . . to permit entry upon designated land or other property in the possession or control of the party upon whom the request is served . . . .") The Court finds unconvincing the Plaintiff's distinction between an entry for discovery purposes and an entry for trial purposes.

The Court DENIES Defendant's Motion for an Order Permitting the Jury's View of the Searsport Terminal (Docket # 43); the Court GRANTS Plaintiff's Motion for Inspection of Premises (Docket # 42).[3]

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of July, 2007

---

[3] The Court's Order simply grants the motion for inspection. It anticipates that the parties will cooperate in determining the specifics of how the inspection will occur.