UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ASHLEY ROONEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CV-06-20-B-W |
| | ) | |
| SPRAGUE ENERGY CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTIONS _IN LIMINE_**

With trial looming in this employment discrimination case, the parties have filed a plethora of motions _in limine_; this Order resolves most disputes and defers ruling on some.

**I.     OVERVIEW**

Since January 2002, Ashley Rooney has suffered symptoms of macular degeneration, a pernicious condition of the area of the retina called the macular, which controls central vision and which causes blurring or blank spots except in peripheral vision.  There is no known cure.[1]  Based on its contention that Mr. Rooney could no longer perform the essential duties of his position, on October 24, 2004, Sprague Energy Corp. (Sprague) placed Mr. Rooney on indefinite leave of absence from his long term position as a Terminal Operator at Sprague's Searsport, Maine terminal on Penobscot Bay.  On February 3, 2006, Mr. Rooney filed a civil action under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 _et seq._, and the Maine Human Rights Act

---

[1] For a more detailed description of the allegations and defenses in this case, see _Rooney v. Sprague_, 483 F. Supp. 2d 43 (D. Me. 2007); for a description of macular degeneration, see _Currier v. Thompson_, 369 F. Supp. 2d 65 (D. Me. 2005).  The Court previously addressed the parties' dueling motions for inspection and jury view.  _Rooney v. Sprague_, 495 F. Supp. 2d 135 (D. Me. 2007).

(MHRA), 5 M.R.S.A. §§ 4551 *et seq.*, claiming that Sprague discriminated against him due to his disability. A jury having been selected, the case is scheduled for trial beginning October 24, 2007.

## II.    THE MOTIONS

Mr. Rooney filed three pre-trial motions, presenting multiple issues:

1)    Motion to Exclude Certain Evidence (Docket # 52) (*Pl.'s Mot. to Exclude*), seeking to exclude the testimony of Burt Russell, the testimony of Nancy Foreman, LCSW, evidence of Mr. Rooney's prior depression, the testimony of Linda Tyer, M.D., all social security records for Mr. Rooney, the December 2004 Terminal Operator Job Description, the June 26, 2000 bulk liquid cargo receipts from vessels standard operating procedure, the Dictionary of Occupational Titles, 4th Edition, the July 28, 2005 on-going statement of disability from Dr. Flynn, a video of Sprague's Searsport facility taken by Evelyn Hartman, evidence that Mr. Rooney sustained a heart attack in 2000, evidence of a November 3, 2001 injury, evidence that Mr. Rooney struck a pole with his truck in July 2003, evidence that Mr. Rooney struck a pole with his front-end loader, evidence that Mr. Rooney fell on stairs on July 2, 2004, Mr. Rooney's application for long-term disability benefits, and any attempt by defense counsel to give Mr. Rooney an impromptu vision test during trial; and,

2)    Motion to Exclude or Limit the Testimony of Evelyn R. Hartman (Docket # 53);

3)    Motion for Order Resolving Editing Issue (Docket # 76); and,

4)     Motion for Order Regarding Plaintiff's Deposition Designations (Docket #
95).

Sprague filed the following pre-trial motions:

1)   Motion to Exclude the Testimony of Maxine Engstrom (Docket # 54);

2)   Motion to Exclude the Issue and Evidence of Back Pay (Docket # 55);

3)   Motion to Exclude the Non-medical Testimony of Dr. Flynn (Docket #
56);

4)   Motion to Exclude Untimely Produced Discovery (Docket # 57);

5)   Motion to Exclude Statements Designed to Appeal to Economic Bias
(Docket # 58);

6)   Motion to Exclude the Issue and Evidence of Emotional Distress (Docket
59); and,

7)   Motion for Order Regarding Plaintiff's Deposition Designations (Docket
# 74).

## III.   DISCUSSION

### A.     Plaintiff's Motion to Exclude Certain Evidence

#### 1.        Testimony of Burt Russell

Mr. Rooney moves to exclude the testimony of Burt Russell on the ground that
Sprague failed to identify him as a potential witness until it filed its final pretrial
memorandum.   Mr. Rooney notes that Mr. Russell is "not mentioned in Defendant's
initial or five supplemental disclosures or in Defendant's answers to interrogatories."
*Pl.'s Mot. to Exclude* at 1.  Sprague responds that Mr. Rooney's contention "exalts form
over substance."  *Def.'s Memo. of Law in Op. to Pl.'s Mot. in Limine to Exclude Certain*

3

*Evidence* at 1 (Docket # 83) (*Def.'s Resp.*).  Observing that Mr. Russell's position as Vice President of terminals and his participation in decision-making discussions was revealed during Sprague's Rule 30(b)(6) deposition, Sprague contends that Mr. Rooney knew that Mr. Russell had "discoverable information" and there was no need to supplement its discovery responses to reveal again what had already been revealed.  *Id.* at 2.

The Court has not been given sufficient information on the motion.  The Scheduling Order set March 21, 2006 as the deadline for Rule 26(a)(1) initial disclosures. Under the terms of the Rule, the disclosure would have included, among other things, Mr. Russell's name, address, telephone number, and the subject of his information. *Scheduling Order* at 1; Fed. R. Civ. P. 26(a)(1).  Mr. Rooney states that Sprague failed to identify Mr. Russell as a potential witness until the final pretrial memorandum and Sprague counters that he was identified at the corporate deposition, but the Court cannot determine whether Sprague's failure to identify Mr. Russell – except in passing during a deposition – constituted a breach of discovery and, if so, what the sanction should be.

Mr. Rooney has failed to supply the Court with its Interrogatories to Sprague and Sprague's responses.  Typically, in interrogatories, a party will ask his opponent to list its potential witnesses, provide identifying information about the witness, and summarize their expected testimony.  If Mr. Rooney posited these questions to Sprague and Sprague failed to identify Mr. Russell, holding his name back until the final pretrial memorandum, Sprague's omission may require some type of remedy.  But, as the Court does not have the discovery, it cannot judge whether the discovery was violated.

This leaves whether the failure to separately identify Mr. Russell in Sprague's initial or supplemental disclosures justifies his exclusion as a witness.  Although the

better practice would have been to identify Mr. Russell in the initial disclosures, as Rule 26(a)(1) contemplates, to conclude based on this scant record that Sprague's failure to do so requires his exclusion as a witness is a step too far.  By making Mr. Rooney aware of Mr. Russell, his position at Sprague, and his involvement in the case, Sprague disclosed at the deposition what would have been disclosed in the initial disclosure.  Absent interrogatories, the ordinary progress of a case does not mandate anything more than a Rule 26(a)(1) disclosure until the filing of a pretrial memorandum.  *See* Fed. R. Civ. P. 26(b)(3); Local Rule 16.4(b).  Based on this record, the Court is unwilling to exclude Mr. Russell as a witness and the Court denies Mr. Rooney's motion to do so.[2]

### 2.    Testimony of Nancy Foreman, LCSW

Mr. Rooney moves to exclude or limit the testimony of Nancy Foreman, who is a licensed clinical social worker, who saw Mr. Rooney from January 15, 2002 to March 5, 2002, and who diagnosed him as suffering from major depressive disorder.  *Pl.'s Mot. to Exclude* at 1-2.  Ms. Foreman stated that Mr. Rooney was "depressed and discouraged about work and was having problems with his boss at that time."  *Id.* at 1.  In addition, Mr. Rooney has stated that Ms. Foreman may testify that Mr. Rooney said he intended to work two more years and then retire.  *Id.* at 1-2.  Mr. Rooney seeks to exclude her testimony on the grounds:  (1) that she was not designated as an expert; (2) that her testimony is irrelevant, since her sessions took place over two years before he was sent home; and, (3) he was sent home due to macular degeneration, not depression.  *Id.* at 2.

Sprague responds that Ms. Foreman is a fact witness and that her testimony is relevant.  It first states that Mr. Rooney is going to claim emotional distress arising from

---

[2] This ruling does not preclude Sprague from making Mr. Russell available to Mr. Rooney before or during trial for formal or informal questioning in an effort to obviate whatever claim of prejudice Mr. Rooney may legitimately make about its failure to adequately respond to its interrogatories.

his being sent home and that it is, therefore, entitled to present evidence of his pre-existing psychological condition, his treatment, and his evidentiary admissions during treatment.  Sprague then notes that Mr. Rooney discussed with Ms. Foreman the upcoming changes in the essential functions of his job at Sprague, his understanding of what the new job description would entail, and whether he thought he could perform those duties.

The brief answer is that Ms. Foreman may testify as a fact witness, but not as an expert witness.  As a lay witness, she may testify about what Mr. Rooney told her during these sessions in 2002, assuming the statements are otherwise admissible.  She is not, however, allowed to testify about her professional opinions – her diagnosis, her treatment plan, Mr. Rooney's clinical response to the treatment plan, and other similar matters of expert testimony.  As the First Circuit has observed, the "line between expert testimony under Fed. R. Evid. 702 and lay opinion testimony under Fed. R. Evid. 701 is not easy to draw."  *United States v. Avala-Pizzaro*, 407 F.3d 25, 28 (1st Cir. 2005) (citation and internal punctuation omitted).   Nevertheless, the Court will remain vigilant to assure that Sprague does not proffer "an expert in lay witness clothing."  Fed. R. Evid. 701 advisory committee's note.

The Plaintiff's motion to exclude Ms. Foreman's testimony is denied; his motion to limit her testimony is granted in part and denied in part.

### 3.     Evidence of Mr. Rooney's Prior Depression and Hopes for Retirement

Mr. Rooney concedes that in 2002, he went to see Ms. Foreman for counseling due to "work problems with his manager."  *Pl.'s Mot. to Exclude* at 2.  He has admitted

that "as of that time, due to these ongoing problems and how they were affecting him, he had hoped to retire in 2 years at age 57." *Id.* He urges the exclusion of any reference to his depression and retirement plans, saying that "[w]hatever his thinking may have been in 2002, Mr. Rooney continued working and never again mentioned retiring." *Id.* Sprague contends that Mr. Rooney's statements in 2002 are relevant to issues of back pay, mitigation, reinstatement, and front pay. *Def.'s Resp.* at 3.

The Court agrees with Sprague. Whether Mr. Rooney has a persuasive explanation for his condition in 2002 and whether he changed his mind about retiring in 2004 remain jury questions, subject to countervailing evidence, argument, and jury resolution.

### 4.      Testimony of Linda K. Tyer, M.D.

Dr. Linda Tyer apparently performed Department of Transportation (DOT) examinations on Mr. Rooney in 2003 and 2004; she issued a one-year license in 2003 and declined to issue a DOT card in 2004. Sprague states that Mr. Rooney "was required to have a [Commercial Driver's License (CDL)] and DOT card to drive the fuel truck as well as the boom truck." *Def.'s Resp.* at 3. Although Sprague admits that there is no current need to operate the fuel truck, the boom truck "remains in use for Oil Spill Emergency Response Drills and for actual emergency responses, which are essential functions of the Terminal Operator job and Plaintiff's own testimony, among others, will establish that he drove the boom truck, but could not do so after losing his DOT card." *Id.* at 3-4.

Sprague also seeks to call Dr. Tyer to testify that Mr. Rooney had high blood pressure in 2003, which is why she limited the DOT card to one year in 2003. *Id.* at 4.

She would also testify that hypertension is a risk factor for worsening macular degeneration. *Id.*

Finally, Sprague would call Dr. Tyer to testify about the circumstances of the June 2004 DOT examination. *Id.* at 4. She treated Mr. Rooney for injuries resulting from a June 2, 2004 fall and, according to Sprague, would raise questions about whether his vision was a factor in the fall. *Id.*

Mr. Rooney seeks to limit Dr. Tyer's testimony to opinions about his eyesight. He contends that the doctor's testimony would "invite the jury to speculate about what effect Mr. Rooney's blood pressure may have had on his continuing ability to work" and the "non-renewal of his CDL should be excluded under Rule 403." *Pl.'s Mot. to Exclude* at 3. He contends that "Sprague had never advanced the claim that having a CDL or having the ability to drive a truck with a CDL is an essential element of the job Mr. Rooney performed." *Id.*

The Court denies Mr. Rooney's motion to exclude Dr. Tyer's testimony. Contrary to Plaintiff's argument, Sprague has asserted that having a CDL is an essential element of the job Mr. Rooney performed. Whether its assertion is credited is a matter for the jury. Assuming, however, the jury finds that one of the essential functions of Mr. Rooney's job is to operate a boom truck and a CDL is necessary to perform this task, Dr. Tyer's testimony would be relevant to the question of whether Mr. Rooney could perform the essential functions of his position. Further, her testimony about Mr. Rooney's hypertension and its role in causing or aggravating macular degeneration is probative of his work capacity, both in 2004 and today, and his prognosis.

### 5.    Mr. Rooney's Social Security Records

Mr. Rooney seeks the wholesale exclusion of his social security records on three grounds:  (1) an asserted discovery violation on the part of Sprague; (2) a claim that such records would be irrelevant; and, (3) the contention that social security records are inadmissible on the MHRA claim, because under Maine law the collateral source rule applies.  *Pl.'s Resp.* at 3-4.  He asks for the exclusion of "all social security records for Mr. Rooney, including without limitation November 16, 2005 SSA Function Report – Adult."  *Id.* at 3.

Mr. Rooney asserts two types of discovery violations by Sprague:  (1) he says that Sprague failed to identify social security records as a potential exhibit in any of its initial or supplementary disclosures or in its answers to interrogatories; and, (2) he says that Sprague has failed to identify which social security records it intends to introduce.  The first claim suffers from a recurring defect.  Mr. Rooney has not provided the Court with copies of the discovery that he contends should have elicited a more complete response from Sprague and the Court has no basis to draw any conclusions about what was disclosed and what should have been disclosed.  The second claim is obviated by the consolidated exhibit list.  Sprague has listed as its exhibit 8 a copy of a function report that Mr. Rooney completed on November 16, 2005.  *Consolidated Ex. List* at 7 (Docket # 75); *Def.'s Resp.* Ex. C.

Moreover, the consolidated exhibit list reveals that the parties' current positions are internally inconsistent.  Mr. Rooney himself has listed some social security records under Plaintiff's Exhibit 4 – Mr. Rooney's wage earning history – and the consolidated list states that Sprague objects because these records were not previously identified or produced and violate Rules 401 and 403.  *Consolidated Ex. List* at 2.  Despite his request

that all social security records be deemed inadmissible, the Court can only presume that Mr. Rooney is not objecting to the admission of his own listed exhibit. Also, curiously, despite Sprague's current position that the social security records are generally admissible, it has taken the position – both in the consolidated exhibit list and in its response to this motion *in limine* – that Mr. Rooney's earnings history is inadmissible. *Def.'s Resp.* at 5 n.3.

Sprague has also listed a social security administration function report as its exhibit 8; the Plaintiff has objected based on hearsay, relevance, and Rule 403. The function report is Mr. Rooney's own detailed description of what he can and cannot do physically. Assuming Sprague can establish a sufficient foundation, the record is admissible as an admission of a party opponent. Fed. R. Evid. 801(d)(2).

Finally, Mr. Rooney's concern about the collateral source rule has nothing to do with this exhibit. The exhibit does not reveal whether Mr. Rooney was awarded social security benefits and does not reflect the amount of those benefits. Instead, the exhibit contains only Mr. Rooney's own affirmations as to what he can and cannot physically do as of November 16, 2005. The record is clearly admissible.

### 6. The December 2004 Terminal Operator Job Description

Mr. Rooney moves to exclude a December 2004 job description for the Terminal Operator position. First, he asserts that Sprague committed a discovery violation by failing to identify the document "in any of its initial or supplementary discovery or in its answers to interrogatories." *Pl.'s Mot. to Exclude* at 4. Second, he asserts that the job description would be irrelevant, since the job description was put into effect two months after Mr. Rooney was sent home. *Id.* He makes the point that if admissible, the timing of

the preparation of the document will "open the door to inquiry as to whether [Sprague] made changes in specific response to Plaintiff's situation." *Id.*

Regarding the alleged discovery violation, Sprague responds that "contrary to Plaintiff's assertion, Defendant in fact identified and produced the December 2004 Job Description under cover dated June 5, 2006, with, *inter alia*, Defendant's Second Supplemental Responses and Objections to Plaintiff's First Request for Documents, along with the job description at issue marked for identification with bates number 904 & 905." *Def.'s Resp.* at 5-6.   It also notes that the document was marked at several depositions. *Id.* at 6.

Turning to the question of relevance, Sprague says that whether the Plaintiff can safely perform the essential functions of his job "is not viewed in the narrow vacuum Plaintiff seeks." *Id.*   Sprague contends the December 2004 job description was being completed prior to October 24, 2004 when Mr. Rooney was sent home and was not developed in response to his case. *Id.*   Further, it observes that the safety defense under Maine law refers to the employee's future ability to perform his employment duties. *Id.*

Sprague is clearly correct.   Regarding the discovery issue, Mr. Rooney says that Sprague failed to provide the contested document, but Sprague's exhibits confirm that it supplied the document to him on June 5, 2006 and that it was marked as a deposition exhibit in various depositions.    Sprague is also correct that if the job description was being prepared before Mr. Rooney was sent home and was formally adopted after he left, the description is admissible.   Mr. Rooney may seek to convince the jury that Sprague prepared the job description in response to Mr. Rooney's situation, but this goes to weight, not admissibility.

Assuming a proper foundation is laid, the Court concludes the December 2004 job description for Terminal Operator is admissible.

### 7.      The June 26, 2000 Bulk Liquid Cargo Receipts

Mr. Rooney asks for the exclusion of a document referred to as the June 26, 2000 "Bulk Liquid Cargo Receipts from Vessels Standard Operating Procedure" on the ground that the document was never identified during discovery. *Pl.'s Mot. to Exclude* at 4. Sprague admits that it never identified the document during discovery, but notes that it was attached as an exhibit to the Affidavit of Duane Seekins, which was filed on November 7, 2006. *Def.'s Resp.* at 7; *Aff. of Duane Seekins* Ex. B (Docket # 16). Further, it states that a companion exhibit was disclosed in discovery, *Def.'s Resp.* at 7, and, therefore, there is no prejudice to the Plaintiff.

Again, the Court agrees with Sprague.  Sprague attached the document to its motion for summary judgment and, in fact, Mr. Seekins' affidavit places the significance of the document in its context.  He explained that the document reflects the duties that the person in charge must be able to perform, including tank gauging, as an essential function of the Terminal Operator Position. *Aff. of Duane Seekins* ¶ 15.  This factual issue was the source of controversy during the resolution of the motion for summary judgment. *See Pl.'s Resp. to Def.'s Mot. for Sum. J.* at 6-7.  Thus, Mr. Rooney was fully aware of the document as early as November 2006 and he has not attempted to demonstrate that he has been prejudiced by Sprague's failure to separately identify the document in discovery.

The Court declines to exclude the June 26, 2000 Bulk Liquid Cargo Receipts from Vessels Standard Operating Procedure document.

### 8.      The Dictionary of Occupational Titles, 4th Edition

Mr. Rooney objects to the admission of the Dictionary of Occupational Titles, 4th Edition on two grounds: (1) he asserts that the treatise was never identified during discovery; and, (2) he contends that as a learned treatise under Rule 803(18), the document is not to be received into evidence. *Pl.'s Mot. to Exclude* at 5. Regarding the alleged discovery violation, Sprague responds that its expert, Evelyn Hartman, identified the Dictionary of Occupational Titles in her report and attached some excerpts. *Def.'s Resp.* at 7. Sprague further responds that it does not intend to offer the entire treatise into evidence, but that Ms. Hartman will "refer to this authoritative resource and excerpts will be used during her testimony." *Id.*

The Court overrules Mr. Rooney's discovery objection. Sprague attached copies of the relevant excerpts in its expert disclosure and, therefore, Mr. Rooney has known since then that Sprague intended to rely on the excerpts during Ms. Hartman's testimony. The parties are correct that Federal Rule of Evidence 803(18) contemplates that the treatise not be admitted into evidence on the theory that "[l]imiting the admission of treatises to periods when an expert is testifying guarantees that the trier of fact will have the benefit of expert evaluation and explanation of how the published material relates to the issues in the case." 5-803 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.20 (Joseph M. McLaughlin ed., 2nd ed. 2007). Thus, learned treatises "may be read into evidence but may not be received as exhibits." *Id.* (quoting Fed. R. Evid. 803(18)). However, whether the learned treatise exception to the hearsay rule is the sole basis for admission of the Dictionary of Occupational Titles is debatable.

### 9. The July 28, 2005 On-Going Physician's Statement of Disability Completed by Dr. Flynn

Mr. Rooney moves to exclude Dr. Flynn's January 28, 2005 Statement of Disability based on an alleged discovery violation. He asserts that Sprague "never identified this document as a potential exhibit in any of its initial or supplementary disclosures or in its answers to interrogatories." *Pl.'s Mot. to Exclude* at 5. More important, says Mr. Rooney, is "that this document post-dates the adverse employment action by 9 months and is not relevant." *Id.* Mr. Rooney contends the "operative inquiry is whether [he] was capable of performing the essential functions of his job at the time Defendant made the decision to send him home on October 27, 2004." *Id.*

Mr. Rooney's allegation of a discovery violation is patently frivolous. Dr. Flynn is Mr. Rooney's expert and as Dr. Flynn's patient, Mr. Rooney, not Sprague, has direct access to his medical records. According to Sprague, it discovered the document when a third party responded to a record release that Mr. Rooney had signed, and Sprague then produced a copy of the doctor's record to Mr. Rooney. *Def.'s Resp.* at 7. Mr. Rooney is in no position to object to the Defendant's allegedly late production of one of his expert's records. Finally, according to Sprague, the Plaintiff agreed, due to the belated discovery of this record, to reconvene the deposition of Dr. Flynn. *Id.* In these circumstances, Mr. Rooney's claim of a discovery violation by Sprague is baffling.

Regarding Mr. Rooney's contention that Dr. Flynn should be restricted to testimony about his medical condition as of the date of the employment action, the Court disagrees. First, Mr. Rooney's medical condition as of January 28, 2005 may shed light on his medical condition a few months earlier. Second, the doctor's statement of disability may be fodder for cross-examination. Third, Mr. Rooney's condition after October 27, 2004 may be relevant to the safety defense under Maine law.

The Court rejects the Plaintiff's request to exclude Dr. Flynn's January 28, 2005 physician's certificate.

### 10. Video of Sprague's Searsport Facility Taken by Evelyn Hartman

Mr. Rooney seeks to exclude a videotape that Evelyn Hartman, one of Sprague's experts, took of Sprague facilities.  She says that the videotape actually contains two separate filmings:  (1) an 8:00 to 9:00 p.m. filming of Sprague's South Portland facility; and, (2) a filming of its Searsport facility.  *Pl.'s Mot. to Exclude* at 6.  Mr. Rooney objects to the videotape of the South Portland facility on the grounds of relevance and prejudice, given that the videotape was filmed after dark.  *Id.*  He objects to the second filming on the ground that the videotape was shot while it was raining and "water on the lens of the camera often blurs the picture and obscures the footage."  *Id.*  He also claims that the "camera movements are often fast and jerky and the footage is shot at angles to make stairs appear much steeper than they actually are."  *Id.*  In effect, he objects on foundational grounds – that the videotape does not fairly and accurately represent the facility – and on Rule 403 grounds – that to the extent it does represent the facility, it is unfairly prejudicial.  *Id.*

In response, Sprague agrees to delete the portion of the videotape that depicts the South Portland terminal.  Regarding the Searsport facility, Sprague says that the videotape is "an aid for Ms. Hartman in explaining the job assessment she conducted at the Searsport Terminal."  *Def.'s Resp.* at 8.  It states that the videotape "depicts job duties."  *Id.*  Further, Sprague notes that the Court denied Sprague's motion for a view and the Court "anticipated the use of photographs and video."  *Id.*

Sprague is correct that the Court's Order dated July 5, 2007 contemplated that in lieu of a jury visit to the Searsport Terminal, the parties would be able to present other evidence of the Terminal, including videotape and photographs. *Rooney v. Sprague*, 495 F. Supp. 2d 135, 137 (D. Me. 2007) ("[The substantial equivalence of a jury view] could . . . be obtained through other, less onerous means, such as the presentation of a videotape of the terminal . . . ."). The Court has viewed the videotape of the Searsport Terminal and concludes that Mr. Rooney's complaints about the videotape are exaggerated. Though certainly not a professional job, the videotape fairly and accurately represents what it depicts and, as such, will be helpful to the jury's understanding of the parties' contentions. To the extent that Ms. Hartman's videotape is selective, is incomplete, or is otherwise biased, Mr. Rooney will have the right to develop any inaccuracies during his cross-examination. Finally, the Court's July 5, 2007 Order allowed Mr. Rooney to enter onto the Searsport Terminal, to document what he contends fairly and accurately represents the job he actually was required to perform before October 27, 2004, and to present countervailing videotape or photographic evidence. *See id.* at 136 (granting the Plaintiff's motion for inspection).

The Court grants Mr. Rooney's motion to exclude the South Portland portion of the Hartman videotape and denies his motion to exclude the Searsport portion of the videotape.

**11.    Evidence that the Plaintiff had a Heart Attack in 2000**

Mr. Rooney moves to exclude evidence that in 2000, he sustained a small heart attack. He states that the tests showed no damage to his heart and there is no evidence that his heart attack affected his ability to perform his job before October 27, 2004.

16

Sprague responds that the evidence of the heart attack is relevant on a number of bases: (1) it demonstrates that personal emergencies can and do occur; (2) Sprague placed Mr. Rooney on restricted duty until released to return to work by his physician; and, (3) the heart attack is relevant to the issue of damages, since Mr. Rooney admitted the heart attack was a contributing factor to his depression.

The Court defers ruling until the heart attack is placed in the broader context of the evidence at trial. Before attempting to admit evidence of the heart attack, however, counsel for Sprague must alert the Court by approaching side-bar.

### 12. Evidence of the November 3, 2001 Injury When a Rope Broke During Vessel Docking

Mr. Rooney moves to exclude evidence of an incident that took place on November 3, 2001 when a rope broke while a vessel was being docked. *Pl.'s Mot. to Exclude* at 7. Mr. Rooney represents that this injury occurred "by the breaking of the rope, not Mr. Rooney's eyesight, and is not relevant." He states that the jury should not be allowed to "speculate that the accident was in some way related to Mr. Rooney's macular degeneration." *Id.* at 7. Sprague responds that the incident demonstrates that "accidents can and do occur and cause injury." *Def.'s Resp.* at 8. It contends that the incident "further aids the jury in understanding the importance of vision in terms of reaction and response." *Id.*

The Court overrules Mr. Rooney's objection. Sprague is entitled to present this evidence to demonstrate that eyesight is important to avoid dangerous conditions that may arise suddenly at the work site. To the extent Mr. Rooney is concerned at trial that a jury may misapprehend the circumstances of the injury and assume that the accident was

related to Mr. Rooney's eyesight, the Court will consider, upon request, issuing a cautionary, limiting instruction.

### 13.     Evidence that the Plaintiff Struck a Pole with His Truck, that He Struck a Pole with a Front End Loader, and that He Fell Down the Stairs on the Job Site on June 2, 2004

Mr. Rooney seeks to exclude evidence of three separate incidents at work:  (1) that in July 2003, while leaving work, he struck a pole with the driver's side fender of his truck; (2) that at some unknown time, Mr. Rooney struck a pole with a front end loader; and, (3) that on June 2, 2004, he fell down some stairs in the boiler room.  *Pl.'s Mot. to Exclude* at 7-8.  Mr. Rooney says that none of these incidents was related to his macular degeneration.  Regarding the July 2003 accident, Mr. Rooney says that it was dark, the pole had no light on it, and there was a bar blocking his line of sight to the pole.  *Id.*  Similarly, regarding the front end loader incident, he argues that "there is no evidence beyond rank speculation" that his eyesight played a role in the accident.  *Id.* at 8.  Finally, regarding the June 2, 2004 incident, he claims that the stairway had furniture, a ladder, and equipment on it and that he stubbed his foot as he tried to make a turn to get past these objects.  *Id.* at 8.  Citing *Equal Opportunity Comm'n  v. Union Pacific Railroad*, 6 F. Supp. 2d 1135, 1138 (D. Idaho 1998) and *Fortier v. Lovejoy*, 520 A.2d 1303 (Me. 1987), Mr. Rooney contends that evidence of this accident would be more prejudicial than probative.[3]

---

[3] The Court does not view *Union Pacific Railroad* as dispositive.  In that case, the employer admitted that it "possessed only rank speculation at the time of Warburton's removal that his monocular vision contributed to the accident."  *Union Pacific Railroad*, 6 F. Supp. 2d at 1138.  Sprague has made no such admission.  In *Fortier*, the Maine Supreme Judicial Court held that a motorcycle driver's history of prior motorcycle accidents was inadmissible, since the jury "could well have inferred from the fact of Fortier's earlier involvement in motor vehicle accidents that he was an accident-prone driver and that he was likely to have been driving in a negligent manner at the time of his encounter with [the defendant]."  *Fortier*, 520 A.2d at

Sprague responds that Mr. Rooney reported deteriorating eyesight as early as October 2001. *Def.'s Resp.* at 9. It says that each of the incidents would be consistent with poor eyesight. It points out that the first incident took place at night, when Mr. Rooney drove his pick up straight into a pole and the front end loader incident was the only incident of its kind at the Searsport Terminal. It raises credibility questions about Mr. Rooney's description of the stair incident and observes that at the time of the stair incident, his vision was substantially worse with "impaired depth perception and distortion." *Id.* at 9.

The Court denies Mr. Rooney's motion *in limine*. The three incidents are each relevant to whether Mr. Rooney's eyesight was affecting his ability to travel safely throughout the work site and, even if Mr. Rooney testifies that his eyesight had nothing to do with any of the incidents, a jury could conclude that in tandem with contemporaneous medical records, his eyesight played a causative role.

## 14.   Evidence of the Plaintiff's Application for and Receipt of Long-Term Disability Benefits

Mr. Rooney seeks to have any evidence of his receipt of long-term disability benefits excluded. *Pl.'s Mot. to Exclude* at 8-9. He argues that "back pay and front pay are equitable remedies to be determined by the court only if the jury returns a verdict in favor of the plaintiff." *Id.* at 8. To admit such evidence, Mr. Rooney says, would "unnecessarily confuse the jury as to the issues for its decision and may mislead the jury

---

1304. It concluded the probative value of such evidence was outweighed by its prejudicial impact. *Id.* at 1305. Here, Mr. Rooney contends that the employment action taken by Sprague was unlawful, because he was capable of performing the essential functions of his job; Sprague has responded that his lack of vision presented a safety issue. The existence of multiple work-site accidents in circumstances where a jury could conclude that Mr. Rooney's lack of vision was a factor is distinct from admission of a litany of motorcycle accidents. Here a jury could reasonably conclude that Mr. Rooney's vision difficulties caused the incidents; in *Fortier*, a jury could not draw any logical inference about the plaintiff's propensity for accidents, especially since there were non-prejudicial alternatives to the admission of such evidence.

into believing that it should award reduced compensatory or punitive damages because the plaintiff received disability benefits." *Id.* Finally, citing *Maine Human Rights Comm'n v. Dep't of Corrections*, 474 A.2d 860 (Me. 1984), Mr. Rooney claims that at least as regards to the MHRA count, the "receipt of LTD benefits is inadmissible," because the collateral source rule applies under Maine law. *Pl.'s Mot. to Exclude* at 9.

Sprague disagrees. To clarify the facts, it asserts that since October 27, 2004, Mr. Rooney has been receiving employer-paid health insurance, for a period after October 27, 2004, he received short-term disability payments from Sprague, and since then, he has been receiving long-term disability payments as well as social security disability benefits. It contends that the First Circuit has left the admissibility of collateral benefits to the discretion of the trial judge and cites as support *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 18 n.16 (1st Cir. 1999) and *Lussier v. Runyon*, 50 F.3d 1103, 1109 (1st Cir. 1995).

Mr. Rooney is correct that under Maine law, the collateral source rule applies in discrimination cases and "[i]f either the victim of discrimination or the discriminating employer is going to receive a windfall because part of the victim's loss has been paid for by a third party, it is more just that the windfall should inure to the injured party than to the wrongdoer." *Maine Human Rights Comm'n v. Dep't of Corrections*, 474 A.2d 860, 870 (Me. 1984). Under Maine law, there is "no judicial discretion to reduce a back pay award by amounts received from a collateral source." *Webber v. Int'l Paper Co.*, 307 F. Supp. 2d 119, 124-25 (D. Me. 2004), *aff'd on other grounds* 417 F.3d 229 (1st Cir. 2005).

The answer to the collateral source issue under the ADA is not as clear. In dicta, after noting a split among the circuits, the First Circuit said that it has "yet to take a firm

position." *Quint v. A.E. Staley Mfg. Co.*, 172 F.3d 1, 18 n.16 (1st Cir. 1999). The Court in *Quint* quoted dicta from *Lussier v. Runyon*: "While we tend to agree with those courts that have held the interplay between collateral benefits and back pay to be a matter within the district court's discretion, we need not decide that precise question today." 50 F.3d 1103, 1109 (1st Cir. 1995). Even though there is no binding First Circuit case law, social security benefits are generally considered collateral and are not set-off against a back pay award. *See Judge Hornby's Draft of Pattern Jury Instructions for Cases of Employment Discrimination*, § 7.2 n.151 (updated April 6, 2004) and cases cited therein.

But, whether Mr. Rooney's short and long-term disability benefits are a collateral source is not resolvable from the information the Plaintiff has provided. As Chief Judge Singal noted in *Webber*, the resolution of this question requires application of the "five-factor inquiry" described in *Allen v. Exxon Shipping Co. Webber*, 307 F. Supp. 2d at 125 (quoting *Allen v. Exxon Shipping Co.*, 639 F. Supp. 1545, 1547-48 (D. Me. 1986)). The motion *in limine* does not contain enough information to apply the five-factor test and therefore, on this record, the motion must be denied.

The Court grants Mr. Rooney's motion to exclude evidence of his receipt of social security benefits; it defers ruling on evidence of his receipt of short and long-term disability benefits.

### 15.    Impromptu Vision Test During Trial

Mr. Rooney is concerned that during trial, Sprague's counsel may attempt to give him an impromptu vision test and moves for an order excluding any such test. *Pl.'s Mot. to Exclude* at 9. He says that the critical question is not Mr. Rooney's current vision, but his vision as of October 27, 2004, the date he was sent home. *Id.* Further, he asserts that

macular degeneration is a complicated question "the effects of which cannot be made clear by a simple distance impromptu vision test during trial." *Id.* Sprague has responded rather ambiguously. *Def.'s Resp.* at 10. It notes that Mr. Rooney's current vision remains relevant on the issues of "liability, back and front pay or reinstatement, as well as compensatory damages." *Id.* It then complains that Mr. Rooney did not define what he considers to be a vision test. *Id.*

The main point is whether Mr. Bennett as Sprague's counsel will be allowed to give him a vision test during trial. The Court is extremely chary about allowing Mr. Bennett to do so. Although a fine lawyer, Mr. Bennett has no known training in ophthalmology. Putting Mr. Rooney to a playground test in the courtroom by standing a distance away from the witness stand and questioning him about the number of fingers he is holding up would unnecessarily demean Mr. Rooney, would infuse an atmosphere of unfairness into the process, and would be of questionable probative value. The legal test is whether Mr. Rooney could perform the essential functions of his employment at Sprague, not whether he can pass an amateur vision test.

The Court grants Mr. Rooney's motion to exclude an impromptu vision test.

**B.    Plaintiff's Motion to Exclude or Limit the Testimony of Evelyn Hartman**

Mr. Rooney has moved *in limine* to exclude or limit the testimony of Evelyn Hartman, Sprague's vocational expert. *Pl.'s Mot. in Limine to Exclude or Limit Testimony of Evelyn R. Hartman* (Docket # 53) (*Pl.'s Hartman Mot.*). Mr. Rooney contends that Ms. Hartman's opinions "are not based upon sufficient facts or data, will not assist the trier of fact in understanding the evidence or determining a fact in issue, and

would usurp the role of the jury in applying the laws to the facts of this case." *Id.* at 1. Mr. Rooney has not challenged Ms. Hartman's expertise as a vocational expert.

Mr. Rooney complains that Ms. Hartman will be called to testify about the job of terminal operator, its essential functions, and whether he can perform the job functions safely, with or without reasonable accommodations. *Id.* at 3. He says that the determination of the essential functions of a position is "a factual issue for the jury," *id.*, and citing the factors for this analysis set forth in *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 25 (1st Cir. 2002), he argues that "[n]o scientific or technical knowledge is necessary to understand and apply these factors." *Pl.'s Hartman Mot.* at 4. He says that Ms. Hartman's testimony is conclusory and compares her testimony on essential job functions to the argument of counsel. *Id.* Further, Mr. Rooney restates his position that "the primary issue is whether Mr. Rooney was capable of performing the essential functions of his job, with or without reasonable accommodations, as of the date he was sent home." *Id.* at 4-5. As Ms. Hartman has been designated to testify about Mr. Rooney's condition after October 27, 2004, her testimony, Mr. Rooney says, is irrelevant.

Sprague responds that Ms. Hartman's testimony will assist the jury to understand the complex nature of the Sprague operation, how to determine the essential functions of the Terminal Operator position, and whether Mr. Rooney can safely perform those functions, with or without reasonable accommodation. *Def.'s Resp. in Op. to Pl.'s Mot. in Limine to Exclude or Limit Testimony of Evelyn R. Hartman* at 4 (Docket # 81) (*Def.'s Hartman Resp.*).

The Court agrees with Sprague. Having reviewed Ms. Hartman's proffered testimony, the Court concludes that her testimony is not only relevant and scientifically

grounded, but would assist the fact-finder "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702; *see Bristol v. Bd. of County Comm'rs of Clear Creek*, 281 F.3d 1148 (10th Cir. 2002), *vacated in part on other grounds on rehearing en banc*, 312 F.3d 1213 (10th Cir. 2002) (concluding that a medical doctor properly testified about an employee's heart condition and whether he could perform the essential functions of a position). Regarding the question of what issues are to be tried by the jury and what issues are to be tried by the court, the Court concludes that a motion *in limine* is not the best context in which to resolve this issue and will rule on the question separately.

The Court denies the Plaintiff's Motion *in Limine* to Exclude or Limit Testimony of Evelyn R. Hartman (Docket # 53).

### C.      Plaintiff's Motion for Order Resolving Editing Issue

Mr. Rooney's next pretrial motion is for an order to resolve an editing issue. *Pl.'s Mot. for Order Resolving Editing Issue* (Docket # 76) (*Pl.'s Editing Mot.*). Sprague has designated a portion of Mr. Rooney's deposition transcript as follows:

> Q.      And that's because if my memory of a Human Rights Commission hearing is correct, you don't trust your eyes around it?

Mr. Rooney has objected to the reference to the Human Rights Commission hearing and has proposed the question be edited to say: "You don't trust your eyes around it?" Sprague has objected. *Def.'s Op. to Pl.'s Mot. for Order Resolving Editing Issue* (Docket # 98). Sprague contends that the reference to the Human Rights Commission hearing is relevant because Mr. Rooney "made numerous references regarding the essential functions of the Terminal Operator job, which he has since recanted in an effort to create

an issue of fact for the jury." *Id.* Sprague has listed Barbara Lelli, an investigator for the Maine Human Rights Commission, to confirm Mr. Rooney's prior admissions. *Id.*

The Plaintiff has failed to present a record upon which the Court can properly evaluate this exchange. The parties have failed to provide the Court with any context for this question and have even failed to inform the Court what Mr. Rooney's response was. Assuming the context was about Mr. Rooney's ability to perform a job task and that his answer was "yes," then Mr. Rooney has admitted the point. There is no need for Sprague to establish that he admitted it previously. If Mr. Rooney denied the question, then his prior statement may be admissible as an admission under Rule 801((d)(2), but the Court cannot make a ruling, because the parties have failed to provide it with enough information to do so.

The Court denies the Plaintiff's Motion for Order Resolving Editing Issue (Docket # 76).

### D.  Plaintiff's Motion for Order Regarding Deposition Designation Objections – Depositions of Linda Tyer, M.D. and Ashley Rooney

Mr. Rooney has moved for an order ruling on a series of objections to portions of depositions designated by Sprague. *Pl.'s Obs. To Def.'s Deposition Designations and Pl.'s Additional Deposition Designations* (Docket # 95). Sprague has objected. *Def.'s Resp. in Op. to Pl.'s Mot. for Order Regarding Deposition Designation Objections – Depositions of Linda Tyer, M.D. and Ashley Rooney* (Docket # 99). This type of motion does not lend itself to written order and the Court defers ruling until the conference of counsel, which is scheduled for October 11, 2007.

### E.      Defendant's Motion to Exclude Testimony of Maxine Engstrom

Sprague has moved to exclude the testimony of Maxine Engstrom, a former Sprague employee, on two grounds:   (1) an asserted discovery violation; and, (2) relevance and prejudice.   *Def.'s Mot. in Limine to Exclude Testimony of Maxine Engstrom* (Docket # 54) (*Def.'s Engstrom Mot.*).   Regarding the asserted discovery violation, Sprague has attached excerpts of the Plaintiff's initial disclosures, his supplemental disclosures, and his answers to interrogatories.  *Id.* Ex. A-C.  The excerpts fail to reveal Ms. Engstrom's name.  Sprague urges the Court to exclude Ms. Engstrom's testimony on the basis of this alleged discovery violation.  Second, Sprague asserts that Ms. Engstrom, although a former Sprague employee at the Searsport terminal, has not worked for Sprague since 1998.  *Id.* at 3.  Sprague raises some suspicions about why Mr. Rooney might call Ms. Engstrom as a witness and what she will testify to, but Sprague objects to her testimony as irrelevant, unfairly prejudicial, and violative of the rules of discovery.  Mr. Rooney has responded that he does not plan to call Ms. Engstrom as a witness in his case-in-chief and if she is called, it will be in rebuttal.  *Pl.'s Op. to Def.'s Mot. in Limine to Exclude Testimony of Maxine Engstrom* (Docket # 89).

The Court grants Sprague's Motion *in Limine* to Exclude the Testimony of Maxine Engstrom (Docket # 54) during Plaintiff's case-in-chief and reserves ruling as to whether Plaintiff may call Ms. Engstrom in rebuttal.

### F.      Defendant's Motion *in Limine* to Exclude the Issue and Evidence of Back Pay

Sprague moves to exclude the issue and evidence of back pay on the ground that Mr. Rooney has failed to mitigate his damages and is, therefore, not entitled to back pay

as a matter of law. *Def.'s Mot. in Limine to Exclude the Issue and Evidence of Back Pay* (Docket # 55). Sprague has attached excerpts of deposition transcripts in which Mr. Rooney admitted that he has not applied for any jobs since October 2004. *Id.* at 3-4.

Mr. Rooney has responded that he concurs that the issue of back pay should not be introduced before a jury, because it is not a jury question. *Pl.'s Op. to Def.'s Mot. in Limine to Exclude the Issue and Evidence of Back Pay* at 1 (Docket # 90) (*Pl.'s Back Pay Resp.*). He also says that the motion is really in the nature of a motion for summary judgment, dispositively resolving a legal issue, and as such, it should have been filed within the dispositive motion deadline. *Id.* Finally, he says that back pay is an issue of fact to be resolved by the jury, since it is the defendant's burden to prove a failure to mitigate. *Id.*

The Court agrees with Mr. Rooney. In general, the employee's failure to mitigate is an affirmative defense and the burden of proof rests with Sprague. *Quint*, 172 F.3d at 15-16; *Maine Human Rights Comm'n v. City of Auburn*, 425 A.2d 990, 999 (Me. 1981). However, under *Quint*, if an employee has made no effort to find work, it is the employee who "is in a better position to explain [his] preemptive decision to take no action to obtain employment." *Quint*, 172 F.3d at 16. At the same time, *Quint* held out the possibility that in an "extraordinary case," an ADA claimant's decision "to withdraw from the labor market can be found to be justifiable, given that virtually all reemployment prospects are plainly precluded absent some effort to reenter the job market." *Id.* Here, the Court cannot conclude as a matter of law that if Mr. Rooney were allowed to present evidence on the issue, he would be unable to justify his failure to look for work within the *Quint* exception.

The Court denies Sprague's motion *in limine* to exclude the issue and evidence of back pay.  (Docket # 55).

### G.   Motion to Exclude the Non-Medical Testimony of Dr. Flynn

Sprague has moved to exclude what it terms the non-medical testimony of Dr. Flynn.  *Def.'s Mot. in Limine to Exclude Non-Medical Testimony of Dr. Flynn* (Docket # 56).  Sprague does not challenge Dr. Flynn's expertise as an ophthalmologist, but argues that Dr. Flynn strays from his area of expertise, when he opines about what job activities Mr. Rooney can and cannot do.  Sprague seeks to limit Dr. Flynn's testimony to "his medical diagnoses, tests, treatment and the bases therefor."  *Id.* at 6.

The Court denies Sprague's motion.  Sprague fundamentally misconceives how Dr. Flynn, as a medical expert, must be used.  As an undoubted expert in the field of ophthalmology and as Mr. Rooney's treating physician, Dr. Flynn has specialized knowledge about the impact of Mr. Rooney's macular degeneration on his ability to see and, hence, his ability to function more generally.  Dr. Flynn is perfectly capable of applying his expertise to the question of whether Mr. Rooney is capable of performing specific tasks.  He does not have to possess detailed personal knowledge of the Terminal Operator job in order to express an opinion that would assist the jury's understanding of the issues in the case.  Instead, Dr. Flynn may assume foundational facts, subject to proof at trial, about the nature of Mr. Rooney's job, and he is then free to express his medical view as to whether he can perform the described functions.  Sprague is equally free to challenge Dr. Flynn's foundational premises and to question whether his medical opinions are consistent with the underlying evidence.

Although counsel occasionally take inconsistent legal positions depending upon how their clients are affected, it is notable that in seeking to defend against Mr. Rooney's motion to exclude Evelyn Hartman, Sprague cited *Bristol*, the Tenth Circuit case, where a medical doctor was allowed to testify about whether the employee's heart condition substantially limited his ability to work and whether he "was qualified for the positions he sought." *Bristol*, 281 F.3d at 1167 n.8. Applying the same standard that Sprague urged upon the Court regarding Ms. Hartman, the Court concludes that applying *Bristol*, Dr. Flynn should be allowed to testify as to Mr. Rooney's restrictions and whether they affect his ability to perform the essential functions of his job as a Terminal Operator.

Sprague also objected to Mr. Rooney's use of a job description, which Sprague had prepared solely for settlement purposes. Again, Sprague objects to Dr. Flynn's testimony, when its real objection is to the foundation for his opinions. If the job description is inadmissible under Fed. R. Evid. 408, Dr. Flynn will not be allowed to express opinions about it; if the document is admissible, he will.

Sprague's motion to exclude non-medical testimony from Dr. Flynn is denied (Docket # 56).

## H.    Motion to Exclude Untimely Produced Discovery

Sprague seeks to exclude from evidence reference to either a video magnifier or a Bak Talk Reversing Aid, claiming that Mr. Rooney committed discovery violations, that the information is "unreliable hearsay" and not relevant, and that whatever probative value is outweighed by prejudicial impact. *Def.'s Mot. in Limine to Exclude Untimely Produced Discovery* at 1 (Docket # 57) (*Def.'s Untimely Mot.*). A videomagnifier is a device that "combines a camera and video monitor to create an enlarged image of printed

29

text." *Currier*, 369 F. Supp. 2d at 66.  It is less clear what a Bak Talk Reversing Aid is, but Mr. Rooney says that vehicles can be retrofitted to attach a "small, accurate and fairly inexpensive sensor, typically used as a back-up sensor."  *Pl.'s Op. to Def.'s Mot. in Limine to Exclude Untimely Produced Discovery* at 1 (Docket # 88) (*Pl.'s Op. to Untimely Mot.*).  These devices give "an audible warning" when an object is sensed within its range.  *Id.* at 1-2.  Sprague attached to its motion copies of documents it said that Plaintiff's counsel copied from the internet, essentially constituting ads for these devices.

Regarding the alleged discovery violation, Sprague says that Mr. Rooney failed to disclose these documents before June 13, 2007.  *See Def.'s Untimely Mot.* at Ex. A (Letter from Attorney Gilbert to Attorney Bennett dated June 13, 2007).  Mr. Rooney does not contend that he gave notice of these documents within the discovery period, but points out that the documents are "universally available to all, including the Defendant." *Pl.'s Op. to Untimely Mot.* at 2.  Mr. Rooney deflects the evidentiary objections by stating that the documents are admissible under Fed. R. Evid. 803(17), the residual exception of Rule 807, and would be admissible under Fed. R. Evid. 801(c), since the ads would not be admitted for their truth.

The Court agrees with Sprague.  Copies of advertisements downloaded and copied from the internet present a host of potential evidentiary problems.  But, here, Mr. Rooney was required to respond to Sprague's discovery requests, so that Sprague could in turn prepare for trial.  Sprague should have been given the opportunity during the discovery period to investigate the videomagnifier and the Bak Talk device and prepare a response.

The Court grants Sprague's Motion to Exclude Untimely Produced Discovery (Docket # 57).

## I.    Motion to Exclude Statements Designed to Appeal to Economic Bias

Fearing that Mr. Rooney will "try to present this action as the little person against a corporate giant," Sprague has filed a motion to exclude statements designed to appeal to the jury's economic biases.  *Def.'s Mot. in Limine to Exclude Statements Designed to Appeal to Economic Bias* (Docket # 58).  It asks the Court to prohibit any reference to Sprague's parent company, arguing it is "wholly irrelevant."  *Id.* at 1.  Mr. Rooney responds that evidence of Sprague's wealth, corporate structure, and propensity to generate income are all relevant to the question of punitive damages.  *Pl.'s Op. to Def.'s Mot. in Limine to Exclude Statements Designed to Appeal to Economic Bias* (Docket # 87) (*Pl.'s Op. to Economic Bias*).

Under *Kolstad v. American Dental Ass'n*, punitive damages are available to an employee if the employer "has engaged in intentional discrimination and has done so with malice or with reckless indifference to the federally protected rights of an aggrieved individual."   527 U.S. 526, 529 (1999) (citation and internal punctuation omitted).  If it is found that Sprague intentionally discriminated against Mr. Rooney because of his disability, the First Circuit has commented that this would be "just the sort of conduct that punitive damages are aimed to deter."  *Che v. Mass. Bay Transp. Auth.*, 342 F.3d 31, 41 (1st Cir. 2003) (citations omitted).  Although a defendant's wealth provides "an open-ended basis for inflating awards when the defendant is wealthy . . . . That does not make its use unlawful or inappropriate. . . ."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 427-28 (2003) (citation omitted).  At the same time, Judge Hornby has noted in

the comments to his model jury instructions on the factors a jury may consider in awarding punitive damages that "[w]e have not listed the defendant's wealth as a factor." *See Judge Hornby's Draft of Pattern Jury Instructions for Cases of Employment Discrimination*, § 81. n.177 (updated March 9, 2007). This is because of "expressions of concern" from the Supreme Court on the use of wealth as a factor in a punitive damages award. *Id.* Mr. Rooney acknowledges that he must be careful not to overstate the argument or "appeal to emotion or improper basis." *Pl.'s Op. to Economic Bias* at 1.

The Court cannot on a motion *in limine* rule evidence of Sprague's wealth inadmissible as a matter of law. The Court denies Sprague's motion

**J.      Motion to Exclude the Issue or Evidence of Emotional Distress Damages**

Sprague seeks to obtain a ruling that any evidence of Mr. Rooney's emotional distress is inadmissible on the ground that Mr. Rooney has "not produced any evidence of such damage and has failed to establish any causal connection to any alleged discriminatory act." *Def.'s Mot. in Limine to Exclude the Issue and Evidence of Emotional Distress Damages* at 1 (Docket # 59) (*Def.'s Emotional Mot.*). Sprague claims that Mr. Rooney's assertions of emotional distress are "deficient as a matter of law" and that his depression "started many years ago for many reasons." *Id.* at 4. In view of the multiplicity of potential causes for his depression, Sprague also objects on the ground that there is no demonstrable causation between the employment action and his emotional sequela. Mr. Rooney responds that whether he has suffered emotional damages is a question of fact, not law. *Pl.'s Op. to Def.'s Mot. in Limine to Exclude the Issue and Evidence of Emotional Distress Damages* (Docket # 86).

The Court agrees with Mr. Rooney.  Compensatory damages are available for violations of the ADA and the MHRA, including damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses." 42 U.S.C. § 1981a(a)(2), (b)(3); 5 M.R.S.A. § 4613(2)(B)(8)(e) ("emotional pain, suffering, inconvenience, mental anguish . . . .").  The Court cannot rule as a matter of law that evidence of Mr. Rooney's emotional damage related to Sprague's allegedly illegal conduct is inadmissible.

The Court denies Sprague's motion to exclude the issue or evidence of emotional distress damages.  (Docket # 59).

### K.     Motion for Order Regarding Plaintiff's Deposition Designations

Sprague has moved for an Order concerning the Plaintiff's deposition designations, raising numerous evidentiary objections.  *Def.'s Ob. to Pl.'s Deposition Designations and Def.'s Additional Deposition Designations* (Docket # 74).  Mr. Rooney has responded.  *Pl.'s Resp. in Op. to Def.'s Mot. for Order Regarding Deposition Designation Obs.*  (Docket # 94).  The Court will rule on these objections on October 11, 2007.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE


Dated this 4th day of October, 2007