UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ASHLEY ROONEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| v. | ) | CV-06-20-B-W |
| | ) | |
| SPRAGUE ENERGY CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## AMENDED[1] ORDER ON DEFINITION OF DISABILITY

The Court concludes that the version of the Maine Human Rights Act in effect when the

Plaintiff filed his cause of action is applicable to this case.

## I.    STATEMENT OF FACTS

On July 3, 2007, Ashley Rooney filed a set of proposed jury instructions, including a

proposal on the definition of "disability":

> In analyzing the first issue, whether Mr. Rooney had a disability as of October 27, 2004, you must put aside any ideas or notions you may have about what is or is not a "disability."  I will define the term for you.  Ashley Rooney has brought [a] claim under . . . the Maine Human Rights Act. . . .  [U]nder [the Act], the existence of a disability is determined without regard to whether its effect is or can be mitigated or reduced by measures such as medication.
> Under the Maine Human Rights Act, a "disability" is any disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness, and includes the physical or mental condition of a person that constitutes a substantial disability as determined by a physician, as well as any other health or sensory impairment that requires special education, vocational rehabilitation or related services.  A person is disabled under Maine law if he (1) has a physical disability; (2) has a record of a physical disability; or (3) is regarded as having a physical disability.

---

[1] This Amended Order amends the first sentence of the last paragraph on page 2 of the Order on Definition of Disability (Docket # 121) dated October 19, 2007 from "The Court was curious whether Mr. Rooney being disabled was still an issue." to "The Court was curious as to whether the parties continued to have a practical disagreement about whether Mr. Rooney was disabled under either the old or new definitions."

*Pl.'s Proposed Jury Instructions* at 4 (Docket # 62).  Sprague filed its own definition later that

same day:

> Plaintiff accuses Sprague of disability discrimination.  Specifically, Plaintiff claims that Sprague placed him on a leave of absence on October 27, 2004.  To succeed on his claim of disability discrimination, Plaintiff must prove by a preponderance of the evidence all of the following:
> First, Plaintiff must prove that he has a physical impairment that substantially limits his vision . . . .
>
> . . .
>
> A person is substantially limited if he is significantly restricted with regard to his vision.  In determining whether an impairment substantially limits Plaintiff's ability to see, you should compare his ability to see with that of the average person.  In doing so, you should also consider: (1) the nature and severity of the impairment; (2) how long the impairment will last or is expected to last; and (3) the permanent or long-term impact, or expected impact, of the impairment.  It is not the name of an impairment or condition that matters, but rather the effect that impairment or condition has on the life of Plaintiff.

*Def.'s Proposed Jury Instructions* at 6-7 (Docket # 72).

On July 6, 2007, Mr. Rooney objected.  *Pl.'s Objection to Def.'s Proposed Jury*

*Instructions* (Docket # 93).  He contends Sprague's statement "does not accurately set forth the

applicable law."  *Id.* at 1.  Citing *Whitney v. Wal-Mart Stores, Inc.*, 2006 ME 37, 895 A.2d 309,

he notes that under the Maine Human Rights Act (MHRA), the plaintiff is not required to

demonstrate substantial limitation of a major life activity and argues that the newly-enacted

MHRA definition of disability, which became effective on June 21, 2007, is not retroactively

applicable to this case.  *Id.* at 2.

The Court was curious as to whether the parties continued to have a practical

disagreement about whether Mr. Rooney was disabled under either the old or new definitions.

Mr. Rooney contends that he was disabled in October 2004 when Sprague placed him on a long-

term leave of absence.  *Pl.'s Trial Br.* at 2 (Docket # 65) ("It is plaintiff's position that he is both

disabled and regarded as disabled . . . .").  Sprague contends that it "determined that Rooney

could not safely perform tasks as a Terminal Operator given his limitations at [the time of his leave of absence]." *Def.'s Trial Mem.* at 8 (Docket # 69).  Although Sprague raised whether Mr. Rooney could meet his burden of establishing that he was disabled on October 24, 2004, it also posited the so-called Safety Defense, namely that Mr. Rooney had a disability that rendered him "unable to perform his duties or perform those duties in a manner which would not endanger the health or safety of the employee or the health or safety of others."  *Id.* at 10 (quoting *Maine Human Rights Comm'n v. Canadian Pacific Ltd.*, 458 A.2d 1225, 1233 (Me. 1983)).

It was the Court's view that perhaps as both Mr. Rooney and Sprague – at least for the Safety Defense – claimed he was disabled, there should be no dispute and, hence, no need to resolve which definition was applicable.  Further, it seemed questionable whether the variations in the definitions of disability proposed by Mr. Rooney and Sprague made a difference, based on the restrictions both parties acknowledge apply to Mr. Rooney.  Preparing jury instructions in anticipation of trial commencing on Wednesday, October 24, 2007, the Court asked counsel whether they had agreed that Mr. Rooney was disabled under the MHRA.  On October 19, 2007, Sprague, however, confirmed that it was unwilling to so stipulate.  *Letter from Atty. Bennett* (Oct. 19, 2007).  The Court has, therefore, issued this Order to clarify which statutory definition applies.

## II.    DISCUSSION

Before June 21, 2007, Maine law defined "physical or mental disability" as:

[A]ny disability, infirmity, malformation, disfigurement, congenital defect or mental condition caused by bodily injury, accident, disease, birth defect, environmental conditions or illness, and includes the physical or mental condition of a person that constitutes a substantial disability as determined by a physician or, in the case of mental disability, by a psychiatrist or psychologist, as well as any other health or sensory impairment that requires special education, vocational rehabilitation or related services.

3

5 M.R.S.A. § 4553(7-A).  In addition, the statute maintained that a person was considered

disabled under Maine law if he or she: "Has a physical or mental disability; Has a record of a

physical or mental disability; or Is regarded as having a physical or mental disability."   5

M.R.S.A. § 4553(7-B).  In *Whitney*, the Maine Supreme Judicial Court concluded that this

"definition of disability in the MHRA leaves no ambiguity for interpretation and supports a

definition of 'disability' without a 'substantially limits one or more of the major life activities'

qualification."  2006 ME 37 at ¶ 28, 895 A.2d at 316.

On June 21, 2007, in response to *Whitney*, the Maine Legislature repealed § 4553(7-A)

and enacted a new definition of disability:

> 1. Physical or mental disability, defined. "Physical or mental disability" means:
>> A. A physical or mental impairment that:
>>> (1) Substantially limits one or more of a person's major life activities;
>>> (2) Significantly impairs physical or mental health; or
>>> (3) Requires special education, vocational rehabilitation or related services;
>> B. Without regard to severity unless otherwise indicated: absent, artificial or replacement limbs, hands, feet or vital organs; alcoholism; amyotrophic lateral sclerosis; bipolar disorder; blindness or abnormal vision loss; cancer; cerebral palsy; chronic obstructive pulmonary disease; Crohn's disease; cystic fibrosis; deafness or abnormal hearing loss; diabetes; substantial disfigurement; epilepsy; heart disease; HIV or AIDS; kidney or renal diseases; lupus; major depressive disorder; mastectomy; mental retardation; multiple sclerosis; muscular dystrophy; paralysis; Parkinson's disease; pervasive developmental disorders; rheumatoid arthritis; schizophrenia; and acquired brain injury;
>> C. With respect to an individual, having a record of any of the conditions in paragraph A or B; or
>> D. With respect to an individual, being regarded as having or likely to develop any of the conditions in paragraph A or B.
> 2. Additional terms. For purposes of this section:
>> A. The existence of a physical or mental disability is determined without regard to the ameliorative effects of mitigating measures such as medication, auxiliary aids or prosthetic devices; and
>> B. "Significantly impairs physical or mental health" means having an actual or expected duration of more than 6 months and impairing health to a significant extent as compared to what is ordinarily experienced in the general population.[2]

---

[2] The amendment also contains some exceptions not relevant here.  5 M.R.S.A. § 4553-A(3).

5 M.R.S.A. § 4553-A.

One major difference between these two definitions is that under the old law as interpreted in *Whitney*, the plaintiff is not required to demonstrate that he is substantially limited in a major life activity; whereas, under the new law, the substantially limits language is incorporated in the statutory standard.  Applying the differing statutory standards to the parties' proposed jury instructions demonstrates that, in general, Mr. Rooney's proposed instruction would comport with the old law and Sprague's with the new.[3]

If a "complaint is filed before the enactment of a statutory change, the general savings provision found in title 1, section 302 applies." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 8, 755 A.2d 1064, 1066.  Maine statutory law provides that "[a]ctions and proceedings pending at the time of the passage, amendment or repeal of an Act . . . are not affected thereby."  1 M.R.S.A. § 302.  The Maine Supreme Judicial Court has explained the circumstances where section 302 comes into play:  "Absent the requisite clear and unequivocal language to the contrary, the general rule that actions and proceedings pending at the time of the passage, amendment or repeal of an act or ordinance are not affected thereby, applies."  *Riley v. Bath Iron Works Corp.*, 639 A.2d 626, 628 (Me. 1994).  Here, there was no such "clear and unequivocal" expression of legislative intent.  To the contrary, in its Emergency Clause, the Legislature expressly stated that "this legislation takes effect when approved."  Pub. L. 2007 Ch. 385, Emergency Clause.  There is no expression of a legislative intent to apply the new definition retroactively.  *Compare Morgan-Leland v. Univ. of Maine*, 632 A.2d 748, 749 (Me. 1993) ("A

---

[3] Whether the distinction between these two definitions makes any practical difference still remains to be seen.  Mr. Rooney has been diagnosed with macular degeneration and would seem – as least based on the evidence put forward in the motion for summary judgment – to be disabled under either the old or new definitions. *See Rooney v. Sprague Energy Corp.*, 483 F. Supp. 2d 43, 47 (D. Me. 2007).  The Court is still not quite clear why the parties are determined to dispute the issue.

clearer statement of legislative intent to apply section 218 to injuries occurring before the effective date of the new statute is hard to imagine.").

Mr. Rooney filed his cause of action in state court on February 2, 2006, and Sprague removed it to this Court on February 9, 2006, *Notice of Removal* (Docket # 1), before the repeal of § 4553(7-A and B) and before the enactment of § 4553-A.  Accordingly, the definition of disability under § 4553(7-A and B) applies to his cause of action under the MHRA.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 22nd day of October, 2007

6