UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ASHLEY ROONEY, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | CV-06-20-B-W |
| | ) | |
| SPRAGUE ENERGY CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION FOR THE COURT'S
FINDING ON THE ISSUE OF SAFETY**

Afflicted with macular degeneration, Ashley Rooney challenged the decision of his employer, Sprague Energy Corp. (Sprague), to place him on an indefinite leave of absence, claiming that Sprague unlawfully discriminated against him because of his disability. Following a five-day jury trial in which the jury found in favor of Mr. Rooney, Sprague moved for a judicial finding on the Maine safety defense, claiming that it had not been presented to the jury. The Court disagrees and concludes that the Maine Safety Defense was presented to the jury and that Sprague has waived any objection to the jury verdict form.

**I.      STATEMENT OF FACTS**

   **A.      Pretrial Proceedings**

Ashley Rooney's Complaint against Sprague listed federal and state causes of action, claiming violations of the Americans with Disabilities Act and the Maine Human Rights Act (MHRA). *Compl.* ¶¶ 5-11 (Docket # 2). In its Answer, Sprague asserted as an affirmative defense that Mr. Rooney "poses a direct threat to the health and safety of himself and/or other individuals in the workplace." *Answer to Compl.* at 4 (Docket # 6). Both Federal and Maine law

address worker safety. *Warren v. United Parcel Serv., Inc.*, 518 F.3d 93, 99-100 (1st Cir. 2008). Federal law places the burden on the employee to demonstrate that he can perform the essential job functions "in a way that does not endanger others." *EEOC v. Amego, Inc.*, 110 F.3d 135, 144 (1st Cir. 1997). Under Maine law, the Maine Safety Defense places the burden on the employer to demonstrate that the employee cannot perform the job safely. 5 M.R.S.A. § 4573-A(1-B) (2007); *Maine Human Rights Comm'n v. Canadian Pac., Ltd.*, 458 A.2d 1225, 1233 (Me. 1983); *Warren*, 518 F.3d at 99-100.[1]

In this case, a Final Pretrial Conference was held on June 11, 2007, and the parties subsequently submitted proposed verdict forms. *Jury Verdict Form* (Docket # 64); *Def.'s Special Jury Verdict Form* (Docket # 73) (*Def.'s Verdict Form*). Sprague's proposed form was lengthy, with fourteen numbered interrogatories and one interrogatory with seventeen subparts. *Def.'s Verdict Form*. On October 16, 2007, Mr. Rooney filed notice that he intended to proceed only on his MHRA claim. *Notice of Pl.'s Election to Proceed Solely Under the Maine Human Rights Act* (Docket # 116).

**B.   The Trial**

**1.   Safety Defense Instructions and the Verdict Form**

The trial began on October 24, 2007. On the morning of October 26, 2007, the Court delivered proposed instructions and a verdict form to counsel; the proposed instructions included instructions on the Maine Safety defense. Before breaking for the day, the Court noted that the instructions had been altered during the day and asked counsel to electronically file anything

---

[1] The Maine statute provides in pertinent part:
> This subchapter does not prohibit an employer from discharging . . . an individual with physical . . . disability . . . if the individual, because of the physical . . . disability, is unable to perform the duties or to perform the duties in a manner that would not endanger the health or safety of the individual or others or is unable to be at, remain at or go to or from the place where the duties of employment are to be performed.

5 M.R.S.A. § 4573-A(1-B).

2

they wanted the Court to review over the weekend. *Tr.* 579:18-25; 580:1-13. Sprague's Attorney, Mr. Bennett, pointed out that the verdict form failed to include Sprague's defenses, including the safety defense and the undue burden defense. *Tr.* 581:13-14. Defense counsel did not object to an interrogatory on the safety defense, but maintained an objection to the undue burden defense. *Tr.* 581:15-25; 582:1-14. The Court suggested that Sprague had not generated the undue burden defense and defense counsel conceded that the "two concepts are basically intermeshed." *Tr..* 582:8-14.

On Sunday, October 28, 2007, Mr. Rooney filed a modified proposed verdict form, which did not include an interrogatory on the Maine Safety Defense. *Special Verdict Form* (Docket # 127). On that same day, Sprague submitted a brief modification to the verdict form which also did not address the Maine Safety Defense. *Notice/Correspondence re: Jury Instructions and Verdict Form* (Docket # 128). On October 29, 2007, the Court held an initial conference of counsel and reviewed proposed jury instructions and verdict form. The Court indicated it would charge the jury on both the Maine Safety Defense and the undue hardship defense. *Tr.* 593:14-15; 594:24-25; 595:1. The proposed verdict form did not include an interrogatory on either the Maine Safety Defense or the undue hardship defense.

At the end of the day on October 29, the Court revisited the jury instructions and the verdict form. Although the parties had suggested verdict forms that contained statutory definitions and asked numerous questions, the Court stated that it was inclined to keep the verdict form as simple as possible. *Tr.* 808:3-6.

On October 30, 2007, the Court held a final charging conference and brought up the verdict form, which again did not contain a separate interrogatory on Sprague's affirmative defenses. *Tr.* 825:4-5. Mr. Bennett made two comments about the form. *Tr.* 826:8-25; 827:1-

25; 828:1-13. One involved whether the verdict form should define the term "qualified individual," *Tr.* 826:8-25; 827:1-9; the other involved the language in the punitive damages interrogatory. *Tr.* 827:10-25; 828:1-13. When asked whether he had any other objections, Mr. Bennett brought up the language on the Maine Safety Defense in the jury instructions, but did not object to the verdict form. *Tr.* 828:15-25. The parties presented further evidence, and after the parties had rested finally, the Court asked counsel during the final break to "take a careful look at the instructions and the verdict form. If there are any problems that either of you notice, let me know. Otherwise, I'll be reading them as drafted." *Tr.* 949:20-23. When the Court returned, counsel was asked whether they were ready for the jury and they each replied they were. *Tr.* 950:1-3.

The Court instructed the jury extensively on the Maine Safety Defense and the undue hardship defense, explaining that Sprague bore the burden of proof on these affirmative defenses. *Tr.* 956:1-6; 966:10-25; 967:1-16. At the close of the instructions, Mr. Bennett objected to "questions five and six, to carry the same objections over."[2] *Tr.* 1035:21-22. Mr. Bennett did not object to the failure to include an interrogatory on Sprague's affirmative defenses. *Tr.* 1035:15-22. The jury returned a verdict in favor of Mr. Rooney, awarding him $300,000 in compensatory damages and $150,000 in punitive damages. *Jury Verdict* (Docket # 133).

---

[2] Questions five and six read:
    5.    What nominal damages, if any, do you award Ashley Rooney against Sprague Energy Corporation?
           If you awarded any nominal damages, proceed to question 6.
           If you awarded no nominal damages, answer no further questions, sign and date the verdict form.
    6.    Has Ashley Rooney proven by clear and convincing evidence that Sprague Energy either knew that its actions violated Maine law or acted with reckless or callous indifference to that risk?
           If no, answer no further questions, sign and date the form.
           If yes, proceed to question 7.
*Jury Verdict* at 2.

## II. DISCUSSION

### A. Sprague Energy's Argument Regarding the Safety Defense

Sprague asks the Court to make a finding on the issue of Maine's safety defense. In support, Sprague highlights the contents of the verdict form, which:

> [P]resented interrogatories solely on the elements of Plaintiff's discrimination claim. As such, to aid the jury in deciding the issues of fact presented to them, the Court specifically directed the jury only to pages 8 and 9 of its instructions which set forth only the "elements of Plaintiff's claim." The Special Jury Verdict form did not include an interrogatory to make a finding on the issue of Maine's safety defense . . . .

*Def.'s Mot. for the Ct.'s Finding on the Issue of Safety* at 2 (Docket # 151). Sprague claims that the jury determined only the elements of Mr. Rooney's discrimination claim, and that the safety defense issue was not presented to the jury, therefore, the question of the safety defense "presents a material issue of fact for the Court's determination." *Id.* Sprague contends that the vehicle for this argument is Federal Rule of Civil Procedure 49(a), which states:

> [If the court] omits any issue of fact raised by the pleadings or by the evidence, each party waives the right to a trial by jury of the issue so omitted unless before the jury retires the party demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict.[3]

Rule 49(a) "invests the trial judge with extensive powers to resolve issues which should have been – but were not – covered by the interrogatories." *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 916 (1st Cir. 1988).

### B. The Role of Jury Instructions and the Verdict Form

Sprague contends that the safety defense was never properly submitted to the jury. That being the case, Sprague argues, the issue is still open and the Court should make its own findings

---

[3] Rule 49(a) was amended on December 1, 2007. For the purposes of this case, the Court will consider the version of the rule in effect at the time of the trial.

5

on whether Mr. Rooney's handicap rendered him unable to perform his job safely. Mr. Rooney objects, saying that the issue of the Maine Safety Defense was submitted to the jury and that he never waived his right to a jury trial on that issue. *Pl.'s Opp'n to Def.'s Mot. for Ct.'s Finding on Issue of Safety* (Docket # 153).

Sprague's position is based on the erroneous proposition that the only means of presenting an issue to the jury is through an explicit interrogatory on the verdict form. The First Circuit has addressed this specific issue:

> On this premise, the instructions that the judge gives are little more than window dressing. That is to say, the court's instructions . . . [would] become meaningless if the court has not provided a separate space on the verdict sheet for the jury to write something like "we find for the defendant on the counterclaim." We do not think this is the law.

*Putnam Res. v. Pateman*, 958 F.2d 448, 454 (1st Cir. 1992). In *Putnam*, the Court continued: "[I]t is well established that verdicts must be construed in light of the totality of the surrounding circumstances, including the court's instructions." *Id.* at 455. The verdict form itself must be "reasonably capable of an interpretation that would allow the jury to address all factual issues essential to the judgment." *Sanchez-Lopez v. Fuentes-Pujols*, 375 F.3d 121, 134 (1st Cir. 2004) (quoting *Sheek v. Asia Badger, Inc.*, 235 F.3d 687, 699 (1st Cir. 2000)). The argument that an issue can only be submitted to a jury by an explicit interrogatory on the verdict form "not only ignores the fact that the Civil Rules themselves provide a vehicle for disposition of cases without any such express reference, but also ignores the importance of the trial court's instructions and the attendant circumstances." *Putnam*, 958 F.2d at 455.

### C.  Waiver

The First Circuit has found that: "Federal Rules of Civil Procedure 49(a) and 51 require that a party must state its objections after the charge but before the jury retires. In this Circuit,

'silence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections.'" *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 253 (1st Cir. 2000) (quoting *Putnam*, 958 F.2d at 456). In *Putnam*, the Court stated:

> It is a rule of law so old that the memory of man runneth not to the contrary that one may not sit by without objection to rulings or instructions, and then after verdict and judgment, and when it is too late for the court to change its rulings or charge, come forward with objections on appeal and seek to put the court in error.[4]

*Putnam*, 958 F.2d at 457 n.6 (quoting *Western Fire Ins. Co. v. Word*, 131 F.2d 541, 543-44 (5th Cir. 1942)).

Here, Sprague was given repeated opportunities to inform the Court that it sought an interrogatory on the Maine Safety Defense. It simply failed to do so. Sprague cannot remain mute about the form of the verdict during trial and find its voice only after it is disappointed with the result. The time to object to the verdict form is before, not after, the verdict. *Anderson*, 862 F.2d at 918 ("To drive the final nail, we note that when the judge, following the charge, asked for objections at sidebar . . . counsel registered no opposition to the interrogatory. It is well settled that a litigant who accedes to the form of a special interrogatory will not be heard to complain after the fact.").

      **D.**    **Analysis of Sprague's Claim that the Safety Defense Was Not Submitted to the Jury.**

Sprague's contention that the Maine Safety Defense was never presented to the jury is equally erroneous. Sprague put Mr. Rooney on leave based on his physical handicap; its rationale then, and its defense now, was that he could not perform his job safely. A review of the transcript reveals that the elements of the safety defense were developed throughout the presentation of testimony and were mentioned prominently during the parties' closing

---

[4] To allow otherwise would "place a premium on agreeable acquiescence to perceivable error as a weapon of appellate advocacy." *Anderson*, 862 F.2d at 918 (quoting *Merchant v. Ruhle*, 740 F.2d 86, 92 (1st Cir. 1984)).

arguments, particularly during Sprague's final summation. Further, the Court instructed the jury in detail about the Maine Safety Defense, its elements, and Sprague's burden to prove this defense by a preponderance of the evidence. *Tr.* 966:10-25; 967:1-3. To conclude that the safety defense was not submitted to the jury would require the Court to ignore the numerous discussions between the parties regarding the safety defense, the detailed testimony presented to the jury about the safety defense, its own instructions to the jury, and the arguments of counsel about the safety defense.

The Court is extremely skeptical about Sprague's claim that the jury never reached the Maine Safety Defense. The jury instructions were structured to require the jury first to consider the concept of "qualified individual." This concept included Mr. Rooney's obligation to prove that he "could have performed the essential functions of the job at the time Sprague Energy placed him on leave if Sprague Energy had made reasonable accommodations for his disability." *Tr.* 962:7-12. The instructions defined "reasonable accommodation," stating that "Maine law requires employers to provide reasonable accommodations to employees who are disabled unless allowing the employee to continue to work would endanger the health or safety of the employee or the health and safety of others . . . ." *Tr.* 964:8-13.

The instructions later discussed the Maine Safety Defense:

> As I mentioned, an employer is not required to make an accommodation for an employee if, because of his disability, allowing the employee to continue to work would endanger the health or safety of the individual or others. This legal principle is known as the safety defense. If Mr. Rooney has established the three disputed factors I listed above, Sprague Energy has the burden to prove this safety defense by a preponderance of the evidence.

*Tr.* 966:10-17. This portion of the instructions echoed the standards earlier mentioned:

> To prove this safety defense, Sprague Energy must prove that it had a factual basis at the time in question, based on an individualized assessment of the relationship between Mr. Rooney's disability and the specific, legitimate

8

>requirements of the job, to believe that a reasonable - - to a reasonable probability that allowing Mr. Rooney to continue working would cause a future deterioration of his health or endanger his safety or endanger the health or safety or others.

*Tr.* 966:18-25. Thus, the earlier definition of "reasonable accommodation" dovetails with the later instruction on the Maine Safety Defense.

To find that Mr. Rooney was a "qualified individual," the jury was required under the jury instructions to conclude that Mr. Rooney could have performed the "essential functions of the job at the time Sprague Energy placed him on leave if Sprague Energy had made reasonable accommodations for his disability." *Tr.* 962:8-12; *Doyle v. Dep't of Human Servs.*, 2003 ME 61, ¶ 14, 824 A.2d 48, 54. Thus, Mr. Rooney had to demonstrate that Sprague could have made reasonable accommodations in accordance with the instructions.[5] "Reasonable accommodation" includes the concept of safety and health of the employee and others. To decide this question, the jury would have then considered the Maine Safety Defense and whether Sprague had met its burden to demonstrate that "allowing the employee to continue to work would endanger the health or safety of the employee or the health and safety of others or unless the accommodation would impose an undue hardship on the employer." *Tr.* 964:8-13.

The instructions provided a pathway whereby the jury was to consider each essential issue, leading the jury to consider the Maine Safety Defense as a part of Sprague's burden of proof. To ignore the Maine Safety Defense, the jury would have ignored the Court's

---

[5] Regarding reasonable accommodation, the Court instructed the jury:
>Definition of reasonable accommodation. A reasonable accommodation is a modification or adjustment to the work environment or to the manner in which a job is performed. A reasonable accommodation may include making existing facilities used by employees readily accessible to and usable by individuals with disabilities; job restructuring; part-time or modified work schedule; reassignment to a vacant position; or acquisition or modification of equipment or devices.
>A reasonable accommodation does not include changing or eliminating any essential function of a job, shifting any of the essential functions of the job to others, or creating a new position for the disabled employee. The law requires employers to make reasonable accommodations for employees with disabilities.

*Tr.* 964:14-25; 965:1-3.

instructions, a premise the Court cannot and does not accept.  *See United States v. Ziskind*, 491 F.3d 10, 15 (1st Cir. 2007) (there is an "almost invariable assumption of the law that jurors follow their instructions") (quoting *Richardson v. Marsh*, 481 U.S. 200, 206 (1987)).

### III.   CONCLUSION

The Court <u>DENIES</u> the Defendant's Motion for the Court's Finding on the Issue of Safety (Docket # 151).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 16th day of May, 2008